FLOCKER v. KREEGER

___

(April 1, 1929. Opinion and Decree.)

___

H. W. Robinson, of New Orleans, attorney for plaintiff, appellee.

Spearing and Mabry; and Spencer, Gidiere, Phelps and Dunbar, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Clyde L. Flocker, plaintiff, was struck by an automobile belonging to defendant and operated by his minor son.

On the night of the accident, and just before it happened, Flocker had stopped his car alongside the curb on Canal Street and had walked to its rear to see if there was anything wrong there, because certain persons who had passed in a car a moment before, had shouted some unintelligible remark to him and pointed to the rear of his car.

He was standing just behind his car, which as we have stated, was immediately alongside the right-hand curb, when he was run into by defendant's automobile and crushed between it and the rear of his own.

No serious defense as to liability was made and the matter is before us solely on the question of the quantum. The jury in the court below awarded plaintiff eight thousand, nine hundred and thirty-one and 30-100 dollars ($8,931.30). Apparently one thousand nine hundred and thirty-one and 30-100 dollars ($1,931.30) of this sum was allowed for actual damages, such as medical and hospital bills, etc., and seven thousand dollars ($7,000.00) for pain, suffering, permanent injuries and impaired earning capacity.

Although no bones were broken, one of plaintiff's legs was seriously crushed, and the flesh of the calf was torn away. On account of his weakened condition the surgeons deemed it advisable not to use anæsthetic in trimming and replacing the torn flesh and ligaments, and there can be no doubt that plaintiff's suffering during these operations must have been excruciating. It was necessary to drill holes in this torn flesh so that rubber tubes might be inserted in order to allow for draining the pus and blood, and for the application of antiseptic solutions.

Shortly after the initial dressing of this wound some of the flesh began to decay and in some places, gangrene set in. This decayed and gangrenous flesh had to be cut away, and each day, for nearly two weeks, some of it had to be severed by the use of scissors and other surgical instruments. For a time, plaintiff was informed that there was a grave possibility that amputation of the leg might be necessary.

After this condition began to improve, it was deemed advisable to graft over the wound, skin taken from plaintiff's other leg. For this purpose more than forty small pieces of skin were removed from the other leg, and, unfortunately, during the course of these grafting operations, gangrene and decay set in, in the flesh and skin of the other leg. It was very difficult to stop the progress of this decay and the treatment was, unquestionably, very painful to plaintiff.

He remained in the hospital for more than two months, and after his removal to his home, was confined to his bed and to a wheel chair for another sixty days, or more. Shortly after he returned home, he contracted pneumonia, and, as a result, for about ten days was in a serious condition.

The physicians testified, that the injured leg, at the time of the trial, had not completely healed and that an ulcerous condition had set in which was most difficult to cure. It was thought by the physicians that this condition resulted from the fact that the lacerations sustained had interfered with the normal functioning of the secondary circulatory system. The physicians also testified that the pneumonia had probably resulted from the general weakened condition of plaintiff and the consequent breakdown of his powers of resistance.

The use of the legs, at the time of the trial, had not been entirely regained and it is doubtful if they will ever completely recover their free and normal usefulness.

Plaintiff's family physician describes his injuries as follows:

"It was a very extensive lacerated wound of the right leg, which began just below the knee in the region known as the popliteal, through that region, through the calf of the leg. There were several openings, I think, four or possibly five, through which small rubber tubes, about the size of a cathode, were inserted; these tubes are known as Dakon tubes, through which Dakon solution is allowed to run to antisepticise the wound, which I should judge, taking the upper limb, was at the popliteal space and extended to about the middle lower third of the leg. Several stitches had been put in the skin and they were already beginning to show signs of sloughing. He had severe contusions of the right arm, but the picture that overshadows all these contusions was the terrific laceration of the calf of the right leg; it was so extensive that it overshadowed everything else, and, as that was the thing we were afraid of would give him trouble, the others were passed over lightly. We continued to Dakonize the wound in the leg for two or three days until the sloughing and the stitches could be removed, and a few days after, large areas of skin, superficial tissues were taken off to economize cutting with the scissors. That would happen every day or two, we would remove more and more of the gangrenous tissues for ten or twelve days, until finally all the gangrenous tissues were removed and that left a large area of muscular tissues exposed to view. We took off the gangrenous tissues with tissue forceps and scissors and bathed the cavity with Dakolin. We gave him no sedatives during the cutting of this gangrenous tissue nor during the actual removal."

424

Defendant argues that the removal of skin from the other leg and the contracting of pneumonia were not the results which normally follow accidents such as the plaintiff sustained, and, therefore, they were not results ordinarily contemplated, and for that reason, defendant should not be called upon to compensate plaintiff for these items of damage.

We cannot agree with defendant in this regard. It may be, that, ordinarily, a person injured in an automobile accident does not contract pneumonia, and, it may be, that as a general thing, a person who has one leg injured is not required to have the skin removed from the other, but certainly these results were caused by the accident and are not so remote or speculative as to relieve defendant of responsibility therefor, since the physicians testify that, in their respective opinions, they resulted from the other injuries which were primarily caused by defendant's son and chargeable to defendant.

It will thus be seen that plaintiff's sufferings were intense and his injuries are to some extent, permanent.

Nevertheless, the amount awarded below seems to us to be somewhat out of line with awards heretofore sanctioned by us, or approved by the Supreme Court, and we believe that substantial justice will be done by allowing plaintiff the sum of seven thousand five hundred dollars ($7,500.00).

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof to seven thousand five hundred dollars ($7,500.00) and, as thus amended, affirmed.